**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DR. BENJAMIN BOL MEL**<br>    Jebel Area, Juba<br>    South Sudan<br><br>                    *Plaintiff,*<br><br>v.<br><br>**BRADLEY T. SMITH, in his official capacity as**<br>    **Director of the United States**<br>    **Department of the Treasury,**<br>    **Office of Foreign Assets Control**<br>    1500 Pennsylvania Avenue, NW<br>    Freedman's Bank Building<br>    Washington, D.C. 20220<br><br>                    *Defendant,*<br><br>and<br><br>**THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>    1500 Pennsylvania Avenue, NW<br>    Freedman's Bank Building<br>    Washington, D.C. 20220<br><br>                    *Defendant.* | Case No. 24-cv-2620<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

Plaintiff Dr. Benjamin Bol Mel brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley T. Smith, and in support of his complaint alleges the following:

## INTRODUCTION

1. This Complaint arises from Defendants' denial of Plaintiff's petition for administrative reconsideration ("petition"). That petition sought the rescission of his identification in the Annex to Executive Order ("E.O.") 13818, and the removal of his name from OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List").

2. On December 20, 2017, Plaintiff was identified in the Annex to E.O. 13818 and consequently became subject to blocking sanctions. Exec. Order No. 13818; 82 Fed. Reg. 60,839 (Dec. 26, 2017).

3. On December 21, 2017, OFAC issued a press release announcing Plaintiff's designation under E.O. 13818 and added his name to the SDN List. *See* Press Release, U.S. Dep't of the Treasury, United States Sanctions Human Rights Abusers and Corrupt Actors Across the Globe (Dec. 21, 2017), https://home.treasury.gov/news/press-releases/sm0243; Notice of OFAC Sanctions, 82 Fed. Reg. 61,665, 61,666 (Dec. 28, 2017). That same day, OFAC designated ABMC Thai-South Sudan Construction Company Limited ("ABMC") and Home and Away LTD ("Home and Away") under E.O. 13818 for being owned or controlled by Plaintiff. *Id.*

4. On July 6, 2021, Plaintiff filed a petition for administrative reconsideration with the Defendants seeking the rescission of his designation and the removal of his name from the SDN List. In that petition, Plaintiff argued that the factual basis for his designation was in error and thus, that there was an insufficient basis for his identification in the Annex to E.O. 13818. Plaintiff later supplemented his petition on November 16, 2021, by proposing remedial measures which, if adopted, would negate the basis for his designation.

5. In response to Plaintiff's petition for administrative reconsideration, OFAC issued two questionnaires to which Plaintiff provided timely and substantive responses.

6.     OFAC also met with Plaintiff's counsel in September 2022 to discuss his then pending petition, which had been the last time that Plaintiff received any substantive communication from Defendants regarding this matter prior to the issuance of a denial of Plaintiff's petition for administrative reconsideration.

7.     On December 13, 2023, Defendants issued a determination letter denying the petition on grounds that are conclusory, speculative, or not connected to the information or arguments presented throughout the administrative delisting process. Notably, Plaintiff was not asked about nor informed of the grounds that would later be cited as the basis for the denial of his petition.

8.     Further, Defendants' decision does not provide a reasoned explanation as to why they discounted the information and evidence presented in the petition, or Plaintiff's other submissions made during the delisting process. Instead, Defendants alleged corrupt actions by entities in which Plaintiff is purported to have a role or interest—but not of Plaintiff himself—as well as "potentially" sanctionable business that Plaintiff purportedly conducted with an unidentified person in 2023.

9.     OFAC's denial letter does not identify what actual conduct Plaintiff engaged in which constitutes corruption. Nor does the denial letter find that Plaintiff's conduct in 2023 with a person on the SDN List to be sanctionable, instead concluding that it was just "potentially" sanctionable. Further, the denial letter fails to explain how the grounds of denial are connected to the information and arguments presented for delisting. Finally, the denial letter does not identify OFAC's reasoning for discounting the information and arguments presented through Plaintiff's petition for administrative reconsideration.

10. Defendants' reliance on conclusory statements and speculation in place of reasoned decision-making to justify keeping Plaintiff on the SDN List is in violation of the Administrative Procedure Act ("APA") and prevents Plaintiff from having a meaningful opportunity to address Defendants' bases for the denial through a renewed delisting petition.

## JURISDICTION AND VENUE

11. This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*; Global Magnitsky Human Rights Accountability Act, 22 U.S.C. § 2656; and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

12. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. 65.

13. Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and (e), as the Defendants reside in this District.

## THE PARTIES

14. Plaintiff is a South Sudanese national and is and was at all times relevant herein resident at Jebel Area, Juba, South Sudan. The closest street to his residence is Hai Jalaba, also known as Juba-Yei Road, across from the United Nations Mission in South Sudan.

15. At the time of his designation, Plaintiff was President and Managing Director of ABMC, a South Sudanese company that was engaged in construction-related activities and the export and import of goods, including agricultural commodities and food supplies.

16. On December 20, 2017, Plaintiff's name was identified in the Annex to E.O. 13818 and his name was added to the SDN List.

17. Defendant OFAC is a federal administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent with E.O. 13818 and implementing regulations located at 31 C.F.R. Parts 501 and 583—*i.e.*, the "Reporting, Procedures and Penalties Regulations" and the "Global Magnitsky Sanctions Regulations," respectively. OFAC was responsible for recommending the inclusion of Plaintiff in the Annex to E.O. 13818, and for adding his name to the SDN List.

18. Defendant Bradley T. Smith is the Director of OFAC. In this role, Mr. Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of delisting requests. Mr. Smith is sued in his official capacity.

**FACTUAL ALLEGATIONS**

A. **Plaintiff's Identification in the Annex to Executive Order 13818**

19. Under the powers granted by the International Emergency Economic Powers Act ("IEEPA") and the Global Magnitsky Human Rights Accountability Act, the President issued E.O. 13818, "Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption."

20. E.O. 13818 authorizes, in relevant part, the imposition of blocking sanctions on persons listed in the Annex to E.O. 13818. *See* Exec. Order No. 13818, § 1(a)(i), 82 Fed. Reg. 60,839 (Dec. 20, 2017). Persons who are designated under E.O. 13818 are identified on OFAC's SDN List. *See* 31 C.F.R. § 583.201, Note 1.

21. In relevant part, blocking sanctions under E.O. 13818 can be imposed on any foreign person appearing in the Annex of the Order; or any foreign person determined by the Secretary of the Treasury to be a current or former government official, or a person acting for or on behalf of such an official, who is responsible for or complicit in, or has directly or indirectly engaged in corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery, or the transfer or the facilitation of the transfer of the proceeds of corruption. Exec. Order No. 13818 § 1(a), 82 Fed. Reg. 60,839 (Dec. 20, 2017).

22. Under E.O. 13818, sanctions can also be imposed on foreign persons determined by the Secretary of the Treasury to be or to have been a leader or official of an entity, including any government entity, that has engaged in, or whose members have engaged in, any of the activities described in E.O. 13818, §1(a), relating to the leader's or official's tenure, or an entity whose property and interests in property are blocked pursuant to E.O. 13818 as a result of the activities related to the leader's or official's tenure, or to have attempted to engage in any of the activities described in E.O. 13818, §1(a)(ii)(A), 1(a)(ii)(B)(1)-1(a)(ii)(B)(2). Exec. Order No. 13818, § 1(a)(ii)(C)-(D).

23. E.O. 13818 also authorizes sanctions on persons determined by the Secretary of the Treasury to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, any activity described in E.O. 13818, §1(a)(ii)(A), 1(a)(ii)(B)(1)-1(a)(ii)(B)(2) that is conducted by a foreign person, any person whose property and interests in property are blocked pursuant to E.O. 13818, or any entity that has engaged in, or whose members have engaged in, any of the activities described in E.O. 13818, §1(a)(ii)(A), 1(a)(ii)(B)(1)-1(a)(ii)(B)(2) where the activity is conducted by a foreign person. E.O.

13818, §1(a)(iii)(A). E.O. 13818 further authorizes sanctions on persons determined to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to E.O. 13818. E.O. 13818, §1(a)(iii)(B). Finally, E.O. 13818 authorizes sanctions on persons determined to have attempted to engaged in any of the activities described in the section. E.O. 13818, §1(a)(iii)(C).

24. E.O. 13818 authorizes the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, to determine that circumstances no longer warrant the imposition of blocking sanctions on persons listed in its Annex and to take actions necessary to give effect to such determination. Exec. Order No. 13818, § 10, 82 Fed. Reg. 60,839 (Dec. 20, 2017).

25. On December 20, 2017, Plaintiff's name was identified in the Annex to E.O. 13818, the immediate consequence of which was that he became subject to blocking sanctions. Exec. Order No. 13818, §1(a)(i), 82 Fed. Reg. 60,839 (Dec. 20, 2017).

26. As a result, Plaintiff's name was included on the SDN List, and all property in which Plaintiff has an interest that is or comes within the United States or the possession or control of a United States person is blocked and cannot be transferred, paid, exported, withdrawn, managed, or otherwise dealt in. *See* Exec. Order No. 13818, § 1(a), 82 Fed. Reg. 60,839 (Dec. 20, 2017). Further, persons engaging in certain transactions or dealings with Plaintiff are themselves exposed to sanctions under E.O. 13818.

27. On December 21, 2017, OFAC issued a press release announcing Plaintiff's identification in the Annex to E.O. 13818, as well as the designation of affiliated persons and entities. *See* Press Release, U.S. Dep't of the Treasury, United States Sanctions Human Rights Abusers and Corrupt Actors Across the Globe (Dec. 21, 2017); Notice of OFAC Sanctions, 82

7

Fed. Reg. 61,665, 61,666 (Dec. 28, 2017). Specifically, OFAC designated ABMC and Home and Away under section 1(a)(iii)(B) of E.O. 13818, for being owned or controlled by Plaintiff. *Id.*

28. In the press release concerning Plaintiff's designation, OFAC alleged that Plaintiff "is the President of ABMC . . . and has served as the Chairman of the South Sudan Chamber of Commerce, Industry, and Agriculture." *Id.* OFAC also alleged that Plaintiff has "served as South Sudanese President Salva Kiir's principal financial advisor, has been Kiir's private secretary, and was perceived within the government as being close to Kiir and the local business community." *Id.* According to OFAC, "[s]everal officials were linked to ABMC in spite of a constitutional prohibition on top government officials transacting commercial business or earning income from outside the government." *Id.*

29. Further, OFAC alleged in the press release that Plaintiff "oversees ABMC, which has been awarded contracts worth tens of millions of dollars by the Government of South Sudan. ABMC allegedly received preferential treatment from high-level officials, and the Government of South Sudan did not hold a competitive process for selecting ABMC to do roadwork on several roads in Juba and throughout South Sudan." *Id.* OFAC further alleged that "[a]lthough this roadwork had been completed only a few years before, the government budgeted tens of millions of dollars more for maintenance of the same roads." *Id.*

### B. OFAC's Disclosure of the Administrative Record

30. On December 14, 2020, Plaintiff submitted a letter requesting disclosure of the administrative record underlying his identification in the Annex of E.O. 13818.

31. On July 8, 2021, OFAC disclosed an unclassified version of the administrative record compiled in support of Plaintiff's identification in the Annex of E.O. 13818. This record

contained some of the conclusions, findings, and supporting exhibits that OFAC relied upon in determining that Plaintiff should be designated under that Order.

32. While most of the substantive rationale relied upon to designate Plaintiff had been redacted from the disclosed evidentiary memorandum, OFAC made two determinations in support of Plaintiff's designation under E.O. 13818.

33. First, OFAC determined that Plaintiff is or has been a leader or official of an entity that has engaged in, or whose members have engaged in, corruption. With respect to this determination, OFAC concluded that: (1) Plaintiff is or has been a leader or official of ABMC; (2) ABMC has engaged, or its members have engaged, in corruption including related to government contracts; and (3) ABMC has engaged, or its members have engaged, in the transfer or the facilitation of the transfer of the proceeds of corruption.

34. Second, OFAC determined that Plaintiff is a current or former government official, or a person acting for or on behalf of such an official, who is responsible for or complicit in or has directly or indirectly engaged in corruption. With respect to this determination, OFAC concluded that Plaintiff is a current or former government official, or a person acting for or on behalf of an official, namely South Sudan's President Salva Kiir.

### C. Plaintiff's Petition for Administrative Reconsideration

35. OFAC has promulgated and administers regulations and procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* Procedures Governing Delisting from the Specially Designated Nationals and Blocked Persons List, 31 C.F.R. § 501.807 (2017). Those procedures allow an interested party to: (i) request reconsideration due to an insufficient legal or factual basis for the designation; (ii)

assert that the circumstances giving rise to the designation no longer apply; or (iii) propose remedial measures intended to negate the basis of the designation. *Id*.

36. OFAC has also provided guidance concerning removal from the SDN List. U.S. Dep't of the Treasury, *Filing a Petition for Removal from an OFAC List*, https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list. This guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. The guidance also offers examples of situations in which a delisting might be warranted, including "a positive change in behavior" or when "the basis for the designation . . . no longer exists." *Id*.

37. On July 6, 2021, Plaintiff submitted a petition for administrative reconsideration of his designation and removal of his name from the SDN List pursuant to OFAC's Procedures Governing Delisting from the SDN List. *See* 31 C.F.R. § 501.807. That submission provided information and supporting documentation arguing that there was an insufficient basis for Plaintiff's designation under E.O. 13818.

38. Specifically, Plaintiff stated, *inter alia*, that he was the President/Managing Director and owner of ABMC, which was engaged in construction-related activities in South Sudan, as well as activities related to the export and import of goods to and from South Sudan, including certain agricultural commodities and food supplies.

39. Plaintiff also stated that, contrary to OFAC's allegations, he had not served as President Kiir's principal financial advisor nor as his private secretary. Indeed, in South Sudan, the President's financial advisors and secretaries are appointed by presidential decree, and there had been no presidential decree appointing Plaintiff to any such position.

40. Defendants assigned Plaintiff's delisting request Case ID GLOMAG-22469.

41. On October 4, 2021, OFAC issued a questionnaire seeking additional, clarifying, and corroborating information in connection with the information and arguments presented in Plaintiff's petition. The requested information included personal identifying information, as well as detailed information regarding Plaintiff's personal and business relationships.

42. On November 16, 2021, Plaintiff filed a supplement to his petition which proposed several remedial measures as a separate and alternative basis for delisting under OFAC's Procedures Governing Delisting from the Specially Designated Nationals and Blocked Persons List at 31 C.F.R. § 501.807. Plaintiff's supplemental submission argued that the remedial measures, if adopted, would negate the basis for his designation under E.O. 13818 and would provide assurances to OFAC that Plaintiff is not engaged in any sanctionable conduct.

43. The proposed remedial measures included, for example, providing ongoing reporting and certification requirements; implementing robust sanctions, anti-money laundering, and anti-bribery and anti-corruption compliance programs at ABMC; and conducting independent audits of ABMC's compliance programs. Plaintiff also proposed to enhance ABMC's corporate transparency practices through the creation of a website disclosing details of its business operations and ultimate beneficial owners; publish information concerning ABMC's executive management and board of directors; produce annual reports disclosing the types of contracts ABMC has worked on and describing ongoing contractual work being performed on behalf of the South Sudanese government; and publish information and documents regarding its bids on government contracts.

44. Plaintiff requested OFAC to enter into an agreement that would obligate Plaintiff to undertake those remedial measures in exchange for the rescission of his designation and the removal of his name from the SDN List.

45. On November 16, 2021, OFAC acknowledged receipt of that submission but did not provide any feedback as to the proposed remedial measures.

46. On January 2, 2022, Plaintiff responded to OFAC's October 4, 2021 questionnaire and provided additional information and supporting documentation regarding his ownership interests, corporate records, and extensive financial statements concerning ABMC's construction contracts.

47. On January 3, 2022, OFAC acknowledged receipt of that submission.

48. On March 31, 2022, OFAC issued a second questionnaire seeking additional, clarifying, or corroborating information with respect to the evidence and arguments presented in Plaintiff's petition and his responses to OFAC's October 4, 2021, questionnaire.

49. Plaintiff responded to that questionnaire on July 25, 2022, and provided supporting documentation responsive to OFAC's questions. Among those documents, Plaintiff provided a copy of ABMC's proposed sanctions, anti-money laundering, and anti-bribery and anti-corruption compliance policies and procedures, as well as a proposed plan for implementation of the compliance programs. Plaintiff also proposed an additional remedial measure in addition to those proposed in his November 16, 2021 submission. That remedial measure involved a proposal to respond to OFAC and other federal agencies regarding any questions concerning sanctions, national security, and foreign policy that it or other federal agencies may ask Plaintiff in the future.

50. On July 26, 2022, OFAC acknowledged receipt of that submission but did not provide any substantive feedback as to the information contained in the submission or the additional proposed remedial measure.

51. On July 8, 2022, Plaintiff requested a meeting or teleconference with OFAC pursuant to 31 C.F.R. § 501.807(c) either with Plaintiff's counsel or with Plaintiff himself, to

discuss the pending delisting request and to provide any necessary clarifications or address OFAC's concerns by providing additional information and evidence. Specifically, this meeting would provide an opportunity to discuss sensitive information in response to certain inquiries OFAC previously made in its questionnaires.

52. On August 19, 2022, OFAC agreed to meet with Plaintiff's counsel.

53. On September 15, 2022, OFAC met with Plaintiff's counsel to discuss the then pending delisting matter. During that meeting, Plaintiff's counsel provided information relevant to Defendants' consideration of Plaintiff's petition and information to be provided by Plaintiff if OFAC were to agree to meet with him in person. At the conclusion of that meeting, OFAC stated that they would consider the information provided during the meeting and inform Plaintiff's counsel if they would agree to meet with Plaintiff.

54. Nearly three months following that meeting, on December 6, 2022, Plaintiff requested an update as to whether OFAC was willing to grant a meeting with Plaintiff or whether there were any additional questions. OFAC did not respond to that email.

55. On December 16, 2022, Plaintiff followed up with OFAC and again asked if there were any updates on his request for a meeting on the matter. OFAC responded to that email the same day and confirmed receipt of both correspondences from December 6 and December 16, 2022. OFAC also denied Plaintiff's meeting request, stating that they "would be happy to accept any new information concerning [Plaintiff's] case in writing at this time."

56. Plaintiff responded to OFAC's December 16, 2022 email by requesting clarification as to whether OFAC's denial of the meeting request was with respect to their deliberation as to whether to meet with Plaintiff to further discuss the matters raised during the September 2022 meeting with OFAC. OFAC responded to that email on February 2, 2023, stating

that they "have decided to not meet with [Plaintiff] regarding additional information," but that Plaintiff may submit additional information while OFAC continues to work on the case.

### D. OFAC's Denial of Plaintiff's Petition for Administrative Reconsideration

57. On December 12, 2023, OFAC denied Plaintiff's petition for administrative reconsideration. In its denial letter, Defendants stated that "OFAC has determined that [Plaintiff] has not submitted credible arguments or evidence establishing that an insufficient basis existed for [Plaintiff's] designation or that circumstances no longer warrant [Plaintiff's] designation."

58. OFAC further stated that "evidence acquired since the original identification of [Plaintiff] on the Annex to E.O. 13818 suggests now-designated entities associated with [Plaintiff] were used for corruption, namely, Arc Resources Corporation Ltd (ARC), which was designated pursuant to E.O. 13818 on December 9, 2021."

59. Specifically, OFAC stated that Plaintiff, "through entities such as ARC where he is a senior executive, continues to be party to corruption related to government contracts and illicit financial transactions," and that "multiple sources indicate ARC is owned or controlled by [Plaintiff]." Additionally, OFAC stated that "information indicates assets of ABMC were merged with ARC."

60. Further, OFAC stated that "information available to OFAC establishes that [Plaintiff] continues to engage in potentially sanctionable behavior. In 2023, [Plaintiff] agreed to conduct business with a foreign person currently listed on OFAC's SDN List."

61. Finally, OFAC noted that Plaintiff "proposes remedial measures for himself and his companies that he claims 'would further negate the basis for his designation.' However, given OFAC's belief that [Plaintiff] continues to engage in corrupt activity and potentially sanctionable

activity, these proposed remedial measures are inadequate and not a basis to rescind [Plaintiff's] designation."

62. Defendants' denial letter does not identify any specific acts of corruption. Nor does Defendants' denial letter identify sanctionable conduct; instead, stating that Plaintiff engaged in "potentially sanctionable behavior."

### E.   Harm Suffered by Plaintiff

63. Plaintiff's identification in the Annex to E.O. 13818 and inclusion on the SDN List—and Defendants' denial of Plaintiff's petition for administrative reconsideration—have caused substantial harm to Plaintiff personally, professionally, and financially, risking his reputation and upending his ability to conduct basic transactions to support his livelihood.

64. Specifically, due to Plaintiff's designation and Defendants' refusal to remove the sanctions on Plaintiff, Plaintiff had to close ABMC for a period of time due to the loss of business partnerships and revenue. To support himself, Plaintiff had to begin selling and/or renting out ABMC's equipment to third parties to mitigate further financial harm resulting from the closure of its operations. While ABMC is currently minimally operational, it is struggling to remain in business due to the sanctions imposed on the Plaintiff.

65. Plaintiff also had to cease his involvement as Chairman of the South Sudan Chamber of Commerce, Industry, and Agriculture due to the sanctions imposed on him.

66. Moreover, Plaintiff has faced, and continues to face, extensive difficulties sustaining his personal and business endeavors, as banks, suppliers, and customers refrain from engaging in transactions with Plaintiff due to fear of potential sanctions exposure.

67. Plaintiff's ongoing suffering is a direct result first of the actions taken by Defendants in imposing blocking sanctions on him, and now by their denial of his petition.

## **CAUSE OF ACTION**

### **COUNT I**

DEFENDANTS' DENIAL OF PLAINTIFF'S PETITION FOR ADMINISTRATIVE RECONSIDERATION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

68. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

69. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

70. OFAC promulgates procedures by which parties subject to its sanctions can petition for administrative reconsideration of their designation and for delisting from the SDN List. 31 C.F.R. § 501.807. Pursuant to OFAC's delisting procedures, a designated person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" or "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a). Designated persons may also argue that there has been a change in circumstances nullifying the reasons for their designation. 31 C.F.R. § 501.807.

71. By denying Plaintiff's petition for administrative reconsideration based on conclusory statements and without affirmatively determining that Plaintiff's post-designation conduct was sanctionable, Defendants acted inconsistent with their own regulations and arbitrarily and capriciously in violation of the APA.

72. By failing to adequately assess the totality of the arguments and evidence presented by Plaintiff during the delisting matter and providing a reasoned basis for discounting such evidence, Defendants acted arbitrarily and capriciously in violation of the APA.

## COUNT II

### DEFENDANTS' DENIAL OF PLAINTIFF'S PROPOSED TERMS OF REMOVAL CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

73. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

74. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

75. By denying Plaintiff's request to enter into a terms of removal agreement, including the remedial measures proposed by Plaintiff pursuant to 31 C.F.R. § 501.807, Defendants acted arbitrarily and capriciously and abused their discretion in violation of the APA. Indeed, Defendants' denial letter does not provide any reasoned basis as to why Plaintiff's proposed remedial measures would not adequately address the basis for Plaintiff's designation under E.O. 13818; instead, Defendants merely say that given Plaintiff's continued conduct—which the remedial measures are intended to correct—the remedial measures would be inadequate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue an order vacating OFAC's denial of Plaintiff's petition for administrative reconsideration;

B. Order Defendants to rescind Plaintiff's designation under E.O. 13818;

C. Remand the matter to Defendants and direct Defendants to provide an adequate explanation as to whether the evidence contained in Plaintiff's petition demonstrated that he is no longer the leader of ABMC;

D. Remand the matter to Defendants and direct Defendants to provide an adequate explanation as to whether the evidence contained in Plaintiff's petition demonstrated that he was not acting for South Sudan's President, Silva Kiir, at the time of his inclusion in the Annex of E.O. 13818;

E. Remand the matter to Defendants and direct Defendants to provide an adequate explanation as to how Plaintiff purportedly "continues to be a party to corruption related to government contracts and illicit financial transactions";

F. Remand the matter to Defendants and direct Defendants to make a definitive determination as to whether Plaintiff indeed did or did not engage in sanctionable behavior and to provide an adequate explanation of what that behavior involved;

G. Grant an award to Plaintiff's costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

H. Grant such other and further relief as the Court may deem just and proper.

Dated: September 11, 2024

                Respectfully submitted,

                /s/ Erich C. Ferrari, Esq.
                Erich C. Ferrari, Esq.
                Ferrari & Associates
                1455 Pennsylvania Ave., NW
                Suite 400
                Washington, D.C. 20004

                 Telephone: (202) 280-6370
                 Fax: (877) 448-4885
                 Email: ferrari@falawpc.com
                 D.C. Bar No. 978253

                 *Counsel for Plaintiff*